IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARNELL DIXON,                )
                              )
            Petitioner,       )
                              )    Case No. 17 CV 1142
        v.                    )
                              )    Judge Robert W. Gettleman
JOHN VARGA, Warden,           )
Dixon Correctional Center,*   )
                              )
            Respondent.       )

## MEMORANDUM ORDER AND OPINION

An Illinois jury found petitioner Darnell Dixon guilty of two counts of first degree murder and one count of home invasion, and the trial judge sentenced him to life in prison. He filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. The State moved to dismiss, arguing that petitioner's claims were procedurally defaulted. This court agreed that the claims were procedurally defaulted, but held that petitioner had presented new evidence sufficient to pass through the actual innocence gateway to a merits review of his procedurally defaulted claims. Dixon v. Watson, No. 17 CV 1142, 2017 WL 3838027 (N.D. Ill. Aug. 31, 2017).

On the merits, petitioner raises four claims for relief: (1) he was denied due process when the state court excluded evidence that the State had dismissed charges against his alleged accomplice, Eugene Langston; (2) he received ineffective assistance of counsel when his trial lawyer failed to object to the exclusion; (3) new evidence shows that he is actually innocent, and

---

* Because petitioner is incarcerated at Dixon Correctional Center, the warden, John Varga, is substituted as respondent. See Fed. R. Civ. P. 25(d).

(4) new evidence shows that the State committed prosecutorial misconduct. The State asks the court to reconsider its earlier ruling and, in the alternative, argues that petitioner's claims are without merit.

For the following reasons, the court denies the State's request to reconsider and denies petitioner relief based on his due process and ineffective assistance claims. Concerning petitioner's substantive actual innocence and prosecutorial misconduct claims, the court directs the parties to submit supplemental briefs on what evidence would be produced at an evidentiary hearing that, if true, would entitle petitioner to relief.

## **BACKGROUND**

Because petitioner has not rebutted the state courts' factual findings, they are adopted by this court. See 28 U.S.C. § 2254(e)(1); Illinois v. Dixon, No. 94-2534 (Ill. App. Ct. 1996) (direct appeal);[1] Illinois v. Dixon, No. 1-08-2946 (Ill. App. Ct. 2011) (first postconviction appeal).[2]

The evidence at trial showed that two individuals were found dead from gunshot wounds five days after they participated in an alleged drug deal-turned-robbery. Petitioner was friends with the robbery victims and was visiting their apartment, which was in petitioner's building, during the robbery. While investigating the murders police interviewed one of the robbery victims, and that interview led to the arrest of petitioner and an attempt to locate an alleged accomplice, Eugene Langston, whom an eyewitness picked out of a lineup as someone leaving the scene around the time of the murders. Detective Michael McDermott and Assistant State's Attorney Henry Simmons interviewed petitioner after his arrest. Simmons wrote a summary of that interview, during which petitioner allegedly confessed to the murders and named Langston

---

[1] Doc. 25-7.
[2] Doc. 25-2.

2

as an accomplice.  Petitioner initialed changes Simmons made to the written summary and confession, including correcting his name from Durrell to Darnell, but ultimately refused to sign it.  Petitioner testified at his trial and denied confessing to the murders, although he admitted that he was present during the drug robbery.

Before trial, petitioner's trial lawyer moved to bar the prosecution from presenting testimony that petitioner confessed to the murders.  That motion was denied.  During a hearing on the motion, petitioner's counsel sought to elicit testimony on the police investigation and evidence police found that someone other than petitioner had committed the murders.  The trial judge sustained objections to almost all that desired testimony.  The judge later granted a motion in limine brought by the State to bar testimony that someone other than petitioner confessed to the murders and did not implicate petitioner as an accomplice.  Petitioner's counsel fought these decisions vehemently and kept a meticulous record of all the trial court's rulings that he perceived as unfair.

The State's case relied on the testimony of Simmons and McDermott, both of whom recounted petitioner's alleged confession in detail.  The court allowed the State to read the alleged confession into the record, and gave the unsigned written statement to the jury to use during deliberation.

The State presented some corroborating evidence.  According to the alleged confession, petitioner stole a van to use as transportation to and from the crime scene.  The State presented evidence that a van matching that description "disappeared" from the location where petitioner allegedly confessed to stealing it, and was recovered, with the column stripped (indicating that it had been stolen), a few blocks from petitioner's apartment.

The State also presented the testimony of Myron Gaston. Gaston was the brother of one of the murder victims, and was present during the drug robbery. He also lived in the apartment with the two murder victims. Gaston testified that petitioner worked for the dealers who were robbed. At trial, petitioner testified and admitted to having sold drugs for the dealers in the past, but claimed to have stopped some time before the robbery. Gaston further testified that somebody called the apartment on the morning of the murders, but the caller said nothing when Gaston answered the telephone. The State called a witness from the telephone company to confirm that the call came from the apartment where the drug robbery had taken place.

In defense, petitioner testified that he had stopped selling drugs for the victims and, when the robbery happened, was not himself robbed. He knew nothing about the murders, was not read his Miranda rights, and only initialed the alleged confession because he was following Simmons's orders. But he refused to sign the confession, petitioner testified, because he knew nothing about the murders and did not commit them. Petitioner's lawyer argued that McDermott and Simmons had motives to lie: McDermott because the murders had gone unsolved for three weeks, and Simmons because he wanted to be a judge and did not want to buck the system.[3]

The jury found petitioner guilty of two counts of first degree murder and one count of home invasion.[4] The trial judge sentenced him to life in prison.[5]

\* \* \*

---

[3] Doc. 25-26 at 560-69.
[4] Doc. 25-1 at 13–14; Doc. 25-26 at 642–43.
[5] Doc. 25-1 at 14–15; Doc. 25-26 at 667–68.

Petitioner appealed; the Illinois Appellate Court affirmed. Illinois v. Dixon, No. 94-2534 (Ill. App. Ct. 1996).[6] Petitioner did not seek leave to appeal to the Illinois Supreme Court.[7]

Petitioner filed a pro se postconviction petition under 725 ILCS 5/122-1 et seq., claiming ineffective assistance of trial and appellate counsel. The state trial court, in an oral ruling, denied the petition.[8] The Illinois Appellate Court affirmed, Illinois v. Dixon, No. 1-08-2946 (Ill. App. Ct. 2011),[9] and the Illinois Supreme Court denied leave to appeal. Illinois v. Dixon, No. 113617 (Ill. Mar. 28, 2012).[10]

After the Appellate Court affirmed the denial of the postconviction petition, petitioner filed a motion for relief from judgment under 735 ILCS 5/2-1401. The trial court denied the motion. Illinois v. Dixon, No. 92-CR-08607-03 (Ill. Cir. Ct. 2012).[11] The Appellate Court affirmed on procedural grounds, Illinois v. Dixon, No. 1-13-1193 (Ill. App. Ct. 2016),[12] and the Illinois Supreme Court denied petitioner's motion for a supervisory order. Dixon v. Illinois, No. M13767 (Ill. Sep. 27, 2016).[13]

Petitioner filed his section 2254 petition in this court. The State argued that petitioner's claims were procedurally defaulted. The court agreed that the claims were procedurally defaulted, but held that petitioner had successfully shown evidence of actual innocence. Dixon, 2017 WL 3838027 at *5. The State then, as directed, answered the petition on the merits, arguing that petitioner's claims are without merit and asking this court to reconsider its earlier holding of

---

[6] Doc. 25-7.
[7] Doc. 1 at 2.
[8] Doc. 25-30 at 91, 101–03.
[9] Doc. 25-2.
[10] Doc. 25-6.
[11] Doc. 25-31 at 80.
[12] Doc. 25-4.
[13] Doc. 25-5.

5

actual innocence. After the State answered, petitioner supplemented his petition with transcript excerpts of Marshan Allen's trial testimony and a Chicago Council of Lawyers evaluation of Henry Simmons's fitness for retention as a Cook County Circuit Court judge.

## **DISCUSSION**

The court first addresses the State's argument that reconsideration is proper because the court now has "a more complete record" than when it ruled on the motion to dismiss. Because the ruling did not grant petitioner relief, it was not a judgment. See Cooke v. Jackson National Life Insurance Co., 882 F.3d 630, 631 (7th Cir. 2018). Without a judgment, a motion a reconsider can be brought only under Fed. R. Civ. P. 54(b). Compare Fed. R. Civ. P. 54(b) (revising a decision before judgment), with Fed. R. Civ. P. 59(e) (altering or amending a judgment), and Fed. R. Civ. P. 60 (relief from a final judgment).

A party may move to reconsider "to present newly discovered evidence," but only when that evidence was not available earlier. Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251–52 (7th Cir. 1987). Since this court's earlier ruling, the only "new evidence" is the state court record—which the State could have presented when it moved to dismiss. Consequently, reconsideration based on newly discovered evidence is not proper, and the State's motion to reconsider is denied.

Next, the court addresses the merits of petitioner's claims. Under section 2254, the standard that applies to a given claim depends on whether that claim has already been decided on the merits by a state court. If so, the court applies a deferential standard and grants relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of facts." Mertz v. Williams, 771 F.3d 1035, 1039–40 (7th Cir. 2014) (quotation marks omitted), quoting 28 U.S.C.

6

§ 2254(d)(1)–(2). If, however, no state court decided a given claim on the merits, the court applies the standard that existed before the enactment of the Anti-Terrorism and Effective Death Penalty Act, which is de novo. Caffey v. Butler, 802 F.3d 884, 894 (7th Cir. 2015), citing 28 U.S.C. § 2243 (directing courts to "dispose of the matter as law and justice require").

Petitioner claims that: (1) he was denied due process when the state court excluded evidence that the State had dismissed charges against his alleged accomplice, Eugene Langston; (2) he received ineffective assistance of counsel when his trial lawyer failed to object to the exclusion; (3) new evidence shows that he is actually innocent, and (4) new evidence shows that the State committed prosecutorial misconduct. The State asks the court to reconsider its earlier ruling and, in the alternative, argues that petitioner's claims are without merit.

**1.      Exclusion of evidence that charges had been dismissed against an accomplice**

Around when the murders happened, a witness saw someone walking away from the building.[14] That witness, after viewing a police lineup that included petitioner and Langston, identified the person walking away as Langston.[15] Later, however, the witness retracted his identification, and the State, after determining that he was not a competent witness, dismissed its case against Langston.[16]

Before trial, the State asked the court to "preclude the defense from bringing into evidence the status of the codefendant, Langston's case."[17] Neither of petitioner's lawyers objected. The court granted the State's request, reasoning that because Langston was not

---

[14] Doc. 25-18 at 27.
[15] Id.
[16] Doc. 25-19 at 22.
[17] Doc. 25-28 at 38.

expected to testify, the status of his case was not "relative or probative."[18]  Later, at trial, while the parties discussed at sidebar the scope of a witness's testimony, petitioner's lawyer asked to introduce evidence that the State had dismissed the charges against Langston.[19]  The trial court denied the request.[20]

Petitioner claims that he was denied due process when the trial court excluded evidence that the State had dismissed charges against Langston, and that he received ineffective assistance of counsel when his trial lawyer failed to object to the exclusion.

### 1a.    Due process claim

The standard for relief depends on whether a state court has already decided petitioner's due process claim on the merits.  The last reasoned state court decision on that claim was in 2012, when the second state postconviction court denied his motion for relief from judgment.  Petitioner argued that the trial court "preclude[d] the defense from enter[]ing into evidence the status of Eugene Langston's case," which "prejudice[d] [petitioner] from putting forth a proper and complete defense."[21]  Quoting <u>Holmes v. South Carolina</u>, 547 U.S. 319, 319, (2006), petitioner argued that, "Whether rooted directly in the due process clause of the fourteenth amendment or in the compulsory process or confrontation clauses of the sixth amendment, the constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."[22]

---

[18] Id.
[19] Doc. 25-18 at 66.
[20] Id.
[21] Doc. 25-31 at 47.
[22] Id.

The state postconviction court construed this solely as a claim that "the Illinois accountability statute requires that Langston actually commit the crime."[23] Although petitioner did indeed claim that the state accountability statute could not sustain his conviction, his federal due process claim was left unaddressed and unresolved. The state postconviction court cited only the state accountability statute and an interpretation of it by the Illinois Appellate Court—which, in turn, cited only the accountability statute and other Illinois Appellate Court opinions, and none of those opinions decided a federal due process challenge to the accountability statute.

"[W]hen a state court explicitly resolves some but not all of a prisoner's federal claims," the federal habeas court must presume that the unresolved claims were decided on the merits. Lee v. Avila, 871 F.3d 565, 571 (7th Cir. 2017), citing Johnson v. Williams, 568 U.S. 289, 293 (2013). When, however, "a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter." Brady v. Pfister, 711 F.3d 818, 825 (7th Cir. 2013), quoting Williams, 568 U.S. at 302–03. Because there is no hint here that the state postconviction court evaluated petitioner's due process claim on the merits, the presumption is rebutted, and this court considers the claim de novo. Caffey, 802 F.3d at 894.

Under the due process clause, a criminal defendant must have "a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986). States, however, "have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," United States v. Scheffer, 523 U.S. 303, 308 (1998), and may limit relevant evidence for "valid" reasons. Montana v. Egelhoff, 518 U.S. 37, 53 (1996). "Only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense

---

[23] Id. at 86.

9

evidence under a state rule of evidence." Nevada v. Jackson, 569 U.S. 505, 509 (2013) (citing cases in which the state rule was "arbitrary" or "could not be rationally defended").

The state rule of evidence here is neither arbitrary nor irrational. Illinois courts have long held that "the disposition of an accomplice's case is generally irrelevant, even when the defendant is being tried on an accountability theory, and when the defendant is the party seeking to introduce the evidence." Illinois v. Walker, 392 Ill. App. 3d 277, 291–92 (2009) (citing cases). According to the state court, evidence that an accomplice was not charged is, "in essence," evidence that the State "had a low opinion of its own case" against that accomplice. That, says the state court, is irrelevant for two reasons. First, the State's opinion on the strength of its case "is not evidence," and therefore is "irrelevant to a jury's determination of guilt or innocence." Id. at 292. Second, because "evidence may be admissible against one that is not admissible against the other," the State's opinion on the strength of each case might differ. Id. These two reasons are rational justifications for the state's evidentiary rule—which ultimately excluded evidence that was neither "vital to the defense," nor "assur[edly] . . . reliable." Kubsch v. Neal, 838 F.3d 845, 854 (7th Cir. 2016). Petitioner thus had a meaningful opportunity to present a complete defense, and was not denied due process.

### 1b. Ineffective assistance claim

Petitioner's trial lawyers did not object to the State's request to exclude evidence that Langston had not been charged.[24] The trial court granted the request, reasoning that the status of Langston's case was not "relative or probative."[25] That failure to object, argues petitioner, denied him his Sixth Amendment right to the effective assistance of counsel.

---

[24] Doc. 25-28 at 38.
[25] Id.

10

To win an ineffective assistance claim, petitioner must show that his lawyer's performance was deficient, and that this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance asks whether the lawyer's conduct was "outside the wide range of professionally competent assistance." Id. at 690. Prejudice asks whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Although no state court decided the merits of petitioner's claim of ineffective assistance of trial counsel, the Illinois Appellate Court did decide the merits of a claim for ineffective assistance of appellate counsel. Dixon, No. 1-08-2946 (Ill. App. Ct. 2011).[26] In that postconviction appeal, the court rejected petitioner's argument that his appellate counsel should have argued that he received ineffective assistance of trial counsel, holding that "trial counsel . . . provided excellent representation . . . and presented [petitioner's] case as well as he could in view of both the evidence and the rulings of the trial judge."[27] Thus, the state court arguably effectively reached the merits of petitioner's ineffective assistance of trial counsel claim. See Sturgeon v. Chandler, 552 F.3d 604, 612 (7th Cir. 2009) (holding that the state court, by deciding the merits of a state prisoner's competency claim, "effectively reached" the merits of the prisoner's ineffective assistance of appellate counsel claim). Yet the grounds for the ineffective assistance claims differ—in his postconviction appeal, petitioner argued that his trial lawyer failed to present the police lineup witness, who could have testified that he later retracted his identification of Langston; here, petitioner argues that his trial lawyer failed to object to the State's request to exclude evidence of Langston's case.

---

[26] Doc. 25-2 at 9–14.
[27] Id. at 14.

11

The court, however, need not decide whether the state court decided petitioner's ineffective assistance of trial counsel claim on the merits because—even considered de novo—no relief is warranted. Consistent with state law, the trial court ruled that evidence of Langston's case was irrelevant. Later, when petitioner's lawyer asked to introduce evidence of Langston's case, the trial court denied the request.[28] Given the trial court's rulings and the state law concerning accountability, there is no reasonable probability that the trial court would have ruled differently if petitioner's lawyers had objected earlier. And because there was no reasonable probability that the trial judge would have ruled differently, deciding not to object was not deficient performance.

**2.     New evidence of substantive actual innocence and prosecutorial misconduct**

At trial, the prosecutor told the jury that it could convict petitioner not only for his own acts, but also for the acts of another for whom he is legally responsible. Concerning this legal responsibility theory, the prosecutor relied heavily on Langston's alleged acts. Langston, said the prosecutor, shot through the door of the apartment, kicked it open, and shot and killed the victims—and for all this, petitioner was also responsible.

In his first postconviction appeal, petitioner argued that his trial lawyer was ineffective: he failed to secure the testimony of the lineup witness, who would have testified that he had retracted his identification of Langston.[29] The witness's "testimony that he recanted his identification of Langston," argued petitioner, "would have directly refuted the claim that [petitioner] could be found liable on a theory of accountability for Langston's actions."[30] In

---

[28] Doc. 25-18 at 66.
[29] Doc. 25-13 at 33–36.
[30] Id. at 35.

12

response, the State took a position on Langston's culpability that—given what it had argued at trial—was inconsistent and contradictory:

| State's opening and closing arguments at trial | State's answering brief on postconviction appeal |
| --- | --- |
| "Or one for whose conduct he is legally responsible." And when you hear that language you think of this defendant for what he did and you think of Eugene Langston because they were together from the beginning, before the commission of the offense, they were together during the commission of the offense, and they were together after the commission of the defense and the defendant helped steal a car, which got Eugene Langston to the apartment. The defendant brought Eugene Langston the shotgun, he gave it to him at the apartment door. That's the language of accountability.[31] | Eugene Langston was never found guilty of connection to the crimes underlying defendant's conviction. Therefore, defendant's claim that he was prejudiced by a recanted identification of a man who had nothing to do with the murders is legally baseless and fully without any merit. While defendant's culpability may have rested on the theory of accountability to some extent, none of that accountability lies with Eugene Langston.[35] |
| Langston kicked in the door, they're holding the guns. Langston kicks in the door, holding a gun, they run in guns ablazing.[32] | |
| [I]f you go out to commit any offense . . . and your intention is to aid any offense, your crime in furtherance of that offense including the crime of murder, you're accountable for the person committing the murder. You become accountable for when Langston fires the gun.[33] | |
| The defendant was the one who enabled Eugene Langston to begin this onslaught of terror.[34] | |

The State's answering brief appears to contradict its own theory at trial—that Langston murdered the victims by twice firing a shotgun through the back door, and that for those murders,

---

[31] Doc. 25-26 at 541.
[32] Id. at 600.
[33] Id. at 592.
[34] Doc. 25-25 at 693.
[35] Doc. 25-14 at 41.

petitioner was accountable—by implying that the State thought Langston had nothing to with the murders. That is not what the State argued to the jury.

This new evidence of the State's inconsistent positions on Langston's culpability, petitioner argues, entitles him to a writ of habeas corpus for two reasons. First, when combined with new evidence that, (1) the detective who took petitioner's confession has a history of beating detainees and had perjured himself to obtain confessions in other cases, and (2) the prosecutor who wrote petitioner's confession had (in a different criminal case) been dishonest with the trial judge, the State's inconsistent positions show that petitioner is actually innocent. Second, the State knew that its prosecution theory at trial was untrue, thus violating petitioner's due process rights.

### 2a.     Substantive actual innocence claim

This court held earlier that petitioner had presented new evidence sufficient to pass through the actual innocence gateway to a merits review of his procedurally defaulted claims. Petitioner, in other words, successfully asserted a claim of procedural actual innocence—which "does not by itself provide a basis for relief," but allows his "otherwise barred constitutional claim[s]" to be "considered on the merits." Schlup v. Delo, 513 U.S. 298, 317 (1995), quoting Herrera v. Collins, 506 U.S. 390, 404 (1993). Petitioner argues, however, that his new evidence not only entitles him to a merits review, but also entitles him to a writ of habeas corpus based on a claim of substantive actual innocence.

A claim of substantive actual innocence asserts innocence not as a basis for reviewing otherwise-barred claims, but instead as a "freestanding" basis for relief. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013). Whether a substantive innocence claim is cognizable as a freestanding constitutional claim "remains open to debate." Tabb v. Christianson, 855 F.3d 757,

764 (7th Cir. 2017) (citing cases). Even if such a claim is cognizable, it "would have to fail" unless the new evidence "unquestionably establish[es]" innocence, Schlup, 513 U.S. at 317, which is "an extraordinarily high" threshold. Herrera, 506 U.S. at 417.

      Although the case is close, that threshold has not been met. The new evidence, to be sure, casts grave doubt on the State's case. It undermines the testimony of a key state witness, Detective McDermott, who claimed that petitioner confessed to the murders. McDermott has had fourteen claims filed against him before the Torture Inquiry and Relief Commission; each claim alleges that McDermott either inflicted or threatened to inflict violence on detainees.[36] In one of those claims, the Commission found that there was "sufficient evidence of torture to conclude the Claim is credible and merits judicial review for appropriate relief."[37] That claim involved a detainee who alleged that McDermott "held a gun to [his] head and threatened to blow his brains out" if he did not confess.[38] The Commission found persuasive a special prosecutor's report, which concluded in a different case that there was enough evidence to indict McDermott for aggravated battery, perjury, and obstruction of justice.[39] McDermott, the report concluded, had beaten a detainee "so severely that he soiled his underwear," and "den[ied] under oath" that he had beaten him.[40] Other detainees alleged that McDermott: beat them; kicked them; threatened to kill them; denied them food, water and sleep; hit them with flashlights and nightsticks; denied them their medication; denied them the washroom; threatened them with electric prods; squeezed their testicles; and repeatedly called them "nigger."[41]

---

[36] Doc. 40-2.
[37] Doc. 40-3 at 16.
[38] Id.
[39] Id.
[40] Id.
[41] Doc. 40-2.

There is more.  Petitioner presents a judicial evaluation of the other key State witness, Simmons, who became a Cook County Circuit Court judge before petitioner's trial.  Simmons was the prosecutor who wrote petitioner's alleged confession, the confession that petitioner refused to sign.  The judicial evaluation concluded that Simmons was not qualified for retention because his "professional conduct" had been affected by "serious incidents," including a "strong inference" that the Illinois Appellate Court had found that Simmons (when he was a prosecutor) was "dishonest with the trial judge . . . in a death penalty case . . . ."[42]  Finding the lower court's denial of an evidentiary hearing not harmless, the Appellate Court reversed and remanded, holding that the petitioner had made "a substantial showing of a violation of a constitutional right"—namely, that Simmons had allowed a jailhouse informant to testify falsely against him. Illinois v. Ramey, No. 1-97-3817, at 7, 9–10 (Ill. App. Ct. Feb. 22, 2000).  Simmons, wrote the Appellate Court, "testified that the State did not give" the informant "a deal in exchange for his testimony," yet the testimony that Simmons later gave in that informant's sentencing hearing "indicate[d] otherwise."  Id. at 9.

Had all this evidence been known to a jury, the credibility of McDermott and Simmons would have been indelibly damned.  They were the State's key witnesses; they secured petitioner's forsworn and unsigned confession; they told their story to the jury.  In light of their lack of credibility, the State's later disavowal of Langston's involvement, and the dearth of any physical evidence tying petitioner to the crime, no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  See Dixon, No. 17 CV 1142, 2017 WL 3838027, at *4–5.

---

[42] Doc. 44 at 10.

16

The new evidence does not, however, seem to meet the "extraordinarily high" threshold of showing that petitioner is "unquestionably" innocent. See House v. Bell, 547 U.S. 518 (2006). The new evidence in House—evidence that the victim had been beaten by another suspect, evidence that the victim had not been raped by the petitioner, and evidence that the victim's blood had spilled from autopsy vials onto the petitioner's clothes—met the threshold for a claim of procedural actual innocence, but not substantive actual innocence. Id. at 540–553. That evidence, explained the Court, had "cast considerable doubt" on the petitioner's guilt, but fell "short of the threshold implied in Herrera." Id. at 555. So too here; petitioner's new evidence blunts his guilt; without more, it does not "conclusive[ly] exonerate[e]" him. Id. at 553. The remaining evidence includes petitioner's unsigned confession, his testimony that he was present during the earlier robbery, and evidence that a van matching petitioner's confession was stolen from and left in places matching the confession. This evidence, although weak, appears to leave his innocence in doubt.

An evidentiary hearing, however, might alter the court's conclusion. The court therefore directs the parties to submit supplemental briefs on what evidence, if any, would be produced at an evidentiary hearing that would entitle petitioner to relief on his substantive actual innocence claim.

### 2b. Prosecutorial misconduct claim

Petitioner argues that that "[b]y pursuing a theory of accountability it knew to be untrue," the State violated petitioner's constitutional right to a fair trial. As petitioner rightly argues, the State cannot have it both ways. It cannot first secure a conviction by telling the jury that petitioner was accountable for Langston, and then argue on postconviction review that because

17

Langston had nothing to do with the murders, petitioner could not have benefited from evidence that exculpated Langston.

If the State believed at trial that Langston had nothing to do with the murders, then it "deliberately misrepresented the truth" to secure a conviction, which "the Fourteenth Amendment cannot tolerate . . . ." Miller v. Pate, 386 U.S. 1, 5–7 (1967) (holding that a capital defendant's due process rights were violated when the State falsely represented that his shorts were stained with blood, when they were actually stained with paint). If, on the other hand, the State believed at trial that Langston had everything to do with the murders, then it misrepresented Langston's culpability to secure an advantage on postconviction appeal. See Davis v. Wakelee, 156 U.S. 680, 689 (1895) (recognizing that when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him"); New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (recognizing this rule as "judicial estoppel").

The State's postconviction brief alone, however, does not seem adequate for resolving petitioner's prosecutorial misconduct claim. Although petitioner requests an evidentiary hearing and respondent opposes such a hearing, neither explains how an evidentiary hearing would or would not develop facts to support petitioner's claim. The court therefore directs the parties to present supplemental briefs on what evidence, if any, would be produced at an evidentiary hearing that would entitle petitioner to relief on his prosecutorial misconduct claim.

# **CONCLUSION**

The State's motion to reconsider this court's earlier ruling in favor of petitioner on his procedural actual innocence claim[43] is denied. Petitioner's motion to supplement his petition[44] is granted. On the merits, petitioner raises, in his petition[45] and amended petition,[46] four claims for relief: (1) he was denied due process when the state court excluded evidence that the State had dismissed charges against Langston; (2) he received ineffective assistance of counsel when his trial lawyer failed to object to the exclusion; (3) his new evidence shows that he is actually innocent, and (4) his new evidence shows that the State committed prosecutorial misconduct. Because the due process and ineffective assistance are without merit, a writ of habeas corpus will not be granted on those claims.

Concerning petitioner's substantive actual innocence and prosecutorial misconduct claims, the court directs the parties to submit supplemental briefs concerning the evidence that would or would not be presented at an evidentiary hearing. The briefs must be submitted on the following dates and conform to the following requirements:

**Issue 1** Concerning petitioner's substantive actual innocence claim, what evidence, if any, would be produced at an evidentiary hearing that would entitle petitioner to relief?

**Issue 2** Concerning petitioner's prosecutorial misconduct claim, what evidence, if any, would be produced at an evidentiary hearing that would entitle petitioner to relief?

**Length** Each brief must contain fewer than nine pages, or 2,000 words.

---

[43] Doc. 42 at 6–11.
[44] Doc. 44.
[45] Doc. 1.
[46] Doc. 40.

**Due dates**   Petitioner's brief is due on or before February 4, 2019.
The State's response is due on or before March 4, 2019.
Petitioner's may file a reply on or before March 18, 2019.

This case is set for a hearing on March 20, 2019, at 9:45 a.m. At that hearing, the parties should be prepared to discuss whether the court should conduct an evidentiary hearing on petitioner's substantive actual innocence claim, his prosecutorial misconduct claim, or both.

**ENTER:**   **January 14, 2019**

**Robert W. Gettleman
United States District Judge**